504 P.2d 31

**AMERICAN EXPRESS COMPANY,**
**Plaintiff and Respondent,**

v.

**UTAH FEATHERS, a Division of Miller Ski**
**Company, a corporation, Defendant**
**and Appellant.**

**No. 12852.**

Supreme Court of Utah.

Dec. 8, 1972.

Jeffs & Jeffs, A. Dean Jeffs, Provo, for defendant-appellant.

Dean E. Terry, Provo, for plaintiff-respondent.

HENRIOD, Justice:

Appeal from a judgment for American Express for documentation charges plus freight charges advanced by it on behalf of Feathers, to ship feathers to Liverpool. Affirmed, with costs to plaintiff.

The record reflects several uncontroverted but pertinent facts in this case: Defendant's Miller who had had 10 years' experience in feather freighting, inquired of plaintiff as to what the going seafaring rate was for feathers from San Francisco to

Liverpool; the plaintiff is a licensed sort of go-between from shipper to shipmaster, —a quoter of rates, so to speak, from published tariffs, without any authority under its franchise to contract for such rates; that in answering defendant's inquiry about rates, plaintiff, in a rather inarticulate and perhaps ambiguous letter, where two rates were suggested,—one for weight, the other for cubic space, responded, attaching a printed copy of a "Shippers Rate Agreement." Believable admissible evidence also showed that another copy was signed by defendant with the Pacific Coast European Conference,—an alter ego agency for a number of international shipping outfits including the Blue Star Line, the steamship line that carried the feathers; that no contract for freightage was signed individually or mutually by either plaintiff and/or defendant, although the latter urged that the elusive correspondence between them ripened into a binding contract; and that defendant was sent invoices by Blue Star on shipment.

The fallacy of defendant's position is that it signed an agreement with the shipowner to pay an alternate weight or cubic foot rate optable by the ship company, and having done so without "paying the freight," so to speak, sought redress from the liaison express agency that neither had the authority or inclination to, but did not sign any contract to pay the tariff, but only performed a documentation service for $25 and advanced as a courtesy service, the freight charge on behalf of defendant, signatory to the freightage contract, which defendant had agreed to pay.

This is not a case of carrying coals to Newcastle, but of feathers to Liverpool. Nor does it involve the conundrum mouthed early in life by school kids anent the quaere as to which is heavier, a pound of lead or a pound of feathers. It is something akin to a bout between a featherweight in one corner and a featherbed in the other, where the rules provide that the referee always can win if he cares to by awarding the bout to either one or the other of the contestants, depending on which choice will better serve the referee's interests. Irrespective of the options in this case, the amount involved hardly would seem to be of sufficient substance to feather the nests of either of the litigants here or that of the prestigious Blue Star Line, and albeit this case is attended with a weight factor, we believe the trial court did not treat it with levity, but with a carefully weighed application of correct legal principles.

CALLISTER, C. J., and TUCKETT, ELLETT, and CROCKETT, JJ., concur.